IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN SAYLER,

    Plaintiff,

vs.

Case No. 2:08-cv-516
Judge Edmund A. Sargus, Jr.
Magistrate Judge Terence P. Kemp

JEREMY GILBERT, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on the Parties' cross-motions for summary judgment. (Docs. 22 & 28). For the reasons set forth herein, the Plaintiff's Motion for Summary Judgment is denied and the Defendants' Motion for Summary Judgment is granted as to Defendants City of Columbus and Columbus Division of Police, but denied as to Defendant Jeremy Gilbert.

### I.    BACKGROUND

This action arises out of events that occurred during the early morning hours of May 6, 2007, while Plaintiff Kevin Sayler ("Sayler") was in the custody of officers of the Columbus Division of Police. Sayler was arrested by Officers Thomas Paige and Brian Beavers for disorderly conduct outside a bar called "Gaswerks" located at 977 North Park Street in Columbus. (Paige Aff. ¶¶ 2-10.) Officers Paige and Beavers had responded to calls from Gaswerks' security personnel about several males, including Sayler, refusing to leave the bar, and proceeded to assist the security personnel in escorting these men out. (Paige Aff. ¶¶ 3-6.) According to Officer Paige, as Officer Beavers escorted Sayler from the bar, Sayler pulled away from the officer and fell to the ground. (Paige Aff.

¶ 6.) Officer Beavers helped Sayler stand up, and continued to escort him outside. (Paige Aff. ¶ 6.) Once outside, the officers instructed Sayler to leave the area but he refused to do so. (Paige Aff. ¶ 7.) The officers then escorted him to a nearby bench and told him to sit. (Paige Aff. ¶ 7.) Despite being commanded to remain seated by the officers, Sayler stood up several times and approached the officers, who repeated their commands that he remain seated. (Paige Aff. ¶ 8.)

At some point, Corey Bowels was spotted by Sayler as Bowels was walking down the sidewalk. The officers later determined that Sayler had been involved in an altercation with Bowels inside the bar. (Paige Aff. ¶ 9.) It was this altercation that apparently caused bar personnel to attempt to remove both Sayler and Bowels. Although there is some dispute as to whether Sayler choked Bowels during the altercation, Sayler admitted that he did at least place his hands on Bowels' neck or neck area. (Sayler Dep. 69.) According to Officer Paige, upon seeing Bowels outside the bar, Sayler stood up, went over to Bowels, clenched his fist, and challenged Bowels to a fight. (Paige Aff. ¶ 9.) According to Sayler, while confronting Bowels, he said "I'll fight you any time." (Sayler Dep. 64.) After the confrontation outside the bar with Bowels, the officers placed Sayler under arrest and charged him with disorderly conduct. (Paige Aff. ¶¶ 9-10.)

Around 1:35 a.m., Officer Jeremy Gilbert ("Gilbert"), who is a defendant in this action, was dispatched to Gaswerks to transport Sayler to jail. (Gilbert Aff. ¶ 2.) When Gilbert arrived at the scene, Officers Paige and Beavers informed him of the circumstances of Sayler's arrest. (Gilbert Aff. ¶ 3.) Gilbert then transported Sayler, who had been handcuffed, to the county jail. (Gilbert Aff. ¶ 5.) It is undisputed that while waiting in the "sally port" entrance of the jail, in an apparent effort to control Sayler, Gilbert performed a grounding technique known as an "arm-bar takedown" on Sayler that resulted in Sayler being thrown to the concrete floor of the garage. (Gilbert Aff. ¶¶ 8-

12.) As a result of the takedown, Sayler fell face first onto the floor, broke his nose, fractured his left orbital socket, and suffered a concussion. (Sayler Aff. ¶ 4.)

The area where Gilbert's takedown of Sayler occurred was monitored by a surveillance camera. Sayler has submitted a one-minute clip of the footage captured that morning as Exhibit 2 to his Memorandum in Support of his Motion for Summary Judgment. The video clip does not include sound, and indicates a time of 2:39 and a date of Sunday, May 6, 2007. In the video, Gilbert and Sayler are seen in the upper right hand quadrant of the camera's field of view. Their backs are to the camera, with Sayler standing in front of Gilbert. Gilbert is seen holding Sayler with his right hand where Sayler's hands are cuffed, and in his left hand, Gilbert is holding a bag, which contains Sayler's belongings. (Gilbert Aff. ¶ 11.) In addition to Gilbert and Sayler, at least three other law enforcement officers and two additional prisoners are present, and all are standing in the same general area within the garage as Gilbert and Sayler, apparently waiting to enter the jail through the nearby door.

Gilbert's takedown of Sayler occurs approximately fifty seconds into the clip. In the time leading up to the takedown, Sayler can be seen swaying and moving within Gilbert's grasp. For instance, at approximately fourteen seconds into the clip, Sayler moves forward toward the door, but is restrained by Gilbert. A few seconds later, he again moves forward and twists, while still being restrained by Gilbert. At approximately forty-seven seconds into the videotape, Gilbert, with Sayler now standing directly in front of him, steps backward, apparently off balance. He then immediately steps forward toward Sayler, places his right arm on Sayler at about the level of Sayler's right shoulder, wraps his left arm around Sayler at about the level of Sayler's left shoulder, rocks Sayler slightly to the right, and, in one motion, swings Sayler back to the left and down to the floor.

-3-

Sayler's knees apparently impact the floor first, while his head impacts the floor only a split second thereafter.

The Parties disagree as to Sayler's level of resistance and belligerence toward Gilbert and the other officers prior to his takedown by Gilbert. The Parties also disagree as to whether Gilbert intended to harm Sayler or gain physical control of him. Defendants contend that Sayler resisted the officers' efforts to control him from the moment he was placed under arrest, was belligerent, and made threatening statements. According to Gilbert, when he took custody of Sayler, Sayler was "loud, belligerent and uncooperative." (Gilbert Aff. ¶ 3.) Sayler "kicked" and "resisted" as Gilbert and the officers attempted to place him in the back of Gilbert's police cruiser. (Gilbert Aff. ¶ 4.) According to Officer Paige, "[Sayler] resisted our efforts to place him in the rear of Officer Gilbert's police cruiser." (Paige Aff. ¶ 11.) Gilbert also contends that Sayler remained loud and belligerent on the way to the jail, and upon arrival, resisted Gilbert's efforts to remove him from the cruiser, even going so far as to lock his feet under a metal screen in the rear of the cruiser with enough force to cause the tops of his feet to be scratched. (Gilbert Aff. ¶ 6.) As they proceeded toward the jail entrance, Sayler continued to be belligerent, made threatening statements, and tried to pull away from Gilbert several times. (Gilbert Aff. ¶ 7.) Gilbert also contends that he warned Sayler to stop pulling away or else Gilbert would have to take Sayler to the ground. (Gilbert Aff. ¶ 7.)

Sayler's version of the facts portrays the situation somewhat differently. In his affidavit, Sayler admits using "foul language directed toward the officer" and being very drunk. (Sayler Aff. ¶ 3.) He also claims that he was having difficulty standing. (Sayler Aff. ¶ 3.) However, Sayler states that "at no time prior to being slammed to the concrete floor, did I attempt to resist or evade

-4-

Officer Gilbert's custody and control."[1] (Sayler Aff. ¶ 3.) Gilbert also alleges that he never intended to cause injuries to Sayler, and that a distraction caused by the scattering of Sayler's belongings and Sayler's sudden movement caused him to lose control of Sayler as he was performing the takedown. (Gilbert Aff. ¶ 11)

In response to his injuries, Sayler filed suit in the Franklin County Court of Common Pleas against Gilbert, the City of Columbus, and the Columbus Division of Police pursuant to 42 U.S.C. § 1983, alleging violation of rights secured to him by the Constitution of the United States. Sayler also makes several claims under state law. Defendants subsequently removed the action to this Court pursuant to 28 U.S.C. § 1441. Now before the Court are the Parties' cross-motions for summary judgment.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more

---

[1] The Court notes Defendants' contention that Sayler's affidavit is contradicted by his deposition testimony on the issue of his level of resistance to Gilbert. The Court discusses how this alleged contradiction should be resolved in the context of a summary judgment Motion in Section II.B.(1), infra.

-5-

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)(stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Here, the Parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy

that burden on his or its own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)(quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

### B.     SAYLER'S § 1983 CLAIMS

Sayler brings claims against Defendants pursuant to 42 U.S.C. § 1983, alleging that Gilbert's actions violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983 (2006). Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *See Barrett*

-7-

*v. Steubenville City Sch.*, 388 F.3d 967, 971 (6th Cir. 2004); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

### (1) SECTION 1983 CLAIM AGAINST GILBERT

Defendants concede that when Gilbert performed the takedown of Sayler, Gilbert was acting in his capacity as a police officer, employed by the Columbus Division of Police, and was thus acting under color of state law. (Answer ¶¶ 6 & 11.) While Sayler has alleged violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, "*all* claims that law enforcement officers have used excessive force . . . in the course of [the] arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989)(emphasis supplied).[2] Although Gilbert's takedown of Sayler occurred some time after Sayler had originally been placed under arrest, the Fourth Amendment reasonableness standard continues to govern as long as an arrestee remains in the custody of the arresting officers. *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988). Accordingly, Sayler's § 1983 claims against Gilbert must be analyzed under the Fourth Amendment.

A determination of reasonableness under the Fourth Amendment requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). In the context of claims of excessive force used during arrest, relevant factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

---

[2]In his Memorandum in Support of his Motion for Summary Judgment, Sayler references the First Amendment. (*See* Pl.'s Mem. Supp. 3-4.) Because Sayler failed to raise such a claim in his Complaint, however, the Court does not address the issue.

-8-

arrest by flight." *Id.*, 490 U.S. at 396. Finally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, 490 U.S. at 396.

At issue in this case is whether Gilbert's takedown of Sayler was an unreasonable exercise of force. Both Parties, albeit in diametrically opposite directions, urge the Court to find that Gilbert's takedown of Sayler was either reasonable or unreasonable as a matter of law. In applying the factors articulated in *Graham* to the evidence submitted by the Parties in support of their motions, however, it is apparent that there are disputed genuine issues of material fact crucial to the balancing required by *Graham*.

While the Parties agree that Sayler had been placed under arrest for a misdemeanor offense,[3] they have presented conflicting evidence as to the second two *Graham* factors—whether Sayler posed an immediate threat to Gilbert or the others waiting near the entrance to the jail that night, and whether Sayler was actively resisting arrest. These two factors are vital in evaluating Gilbert's actions under the Fourth Amendment reasonableness standard. For instance, if Sayler did pose a threat to those around him and was actively resisting arrest, Gilbert's takedown in an effort to restrain Sayler may very well have been objectively reasonable. In contrast, if Sayler posed little or no threat to those around him, and was not actively resisting arrest, then Gilbert's actions may very well have been objectively unreasonable.

If the facts presented are construed in Gilbert's favor, Sayler was intoxicated and resisted Gilbert's control the entire time he was in Gilbert's custody. A few hours prior to the incident in the

---

[3] Under Columbus Ohio law, disorderly conduct is classified as a fourth degree misdemeanor, punishable by not more than 30 days in jail and a fine of not more than $250. COLUMBUS, OHIO, GENERAL OFFENSES CODE §§ 2301.25 & 2317.11 (2005).

-9-

garage Sayler had been involved in a bar fight. Sayler refused to follow the commands of police officers, and, upon seeing his opponent again and while in the presence of those police officers, challenged the opponent to a fight on the spot. Gilbert was aware of the facts leading to Sayler's arrrest. Gilbert also believed, based on his experience and training, that even a handcuffed prisoner can pose a threat to an officer through head-butting, kicking, spiting, or grabbing an officer's firearm. (Gilbert Aff. ¶ 8.) Finally, Gilbert alleges that his decision to take Sayler to the ground was immediately precipitated by Sayler turning and backing into him. Gilbert was pushed backward, leading him to believe that Sayler may have been attempting to head butt him or spit on him. (Gilbert Aff. ¶ 10.) These facts suggest that under *Graham*, Sayler was actively resisting arrest, and potentially posed a significant threat to Gilbert and the others standing nearby, rendering Gilbert's effort to restrain Sayler reasonable.

If the facts presented are construed in Sayler's favor, Sayler, after consuming large quantities of alcohol (see Sayler Dep. 12-13, 23-25, 29-33), was having difficulty standing and maintaining his balance while in Gilbert's custody. Sayler contends that he never actively resisted arrest, never made threatening statements, and never actually challenged Bowels to a fight in the presence of the police officers. Sayler weighed only 155 pounds as compared to Gilbert's estimated 230 pounds (Sayler Aff. ¶ 3), his hands were cuffed behind his back, and he was in an area with at least three other law enforcement officers besides Gilbert standing nearby. If Sayler's version of the facts are true, then, under *Graham*, Gilbert would have been presented with an individual posing little threat to those around him, and who was not actively resisting arrest. Under these circumstances, Gilbert's decision to take Sayler down to the concrete floor of the garage in a sudden, forceful manner, was unreasonable.

Gilbert contends that Sayler's deposition testimony contradicts his affidavit on the issue of whether he resisted arrest. For instance, in the affidavit, Sayler states "at no time prior to being slammed to the concrete floor, did I attempt to resist or evade Officer Gilbert's custody and control[,]" (Sayler Aff. ¶ 3), while in at least two places in his deposition testimony, he admits at least some resistance while he was in custody of Columbus police officers (although not necessarily Gilbert). (Sayler Dep. 59, 61-62.) In order to defeat summary judgment, a party may not attempt to create an issue of material fact by submitting an affidavit that contradicts the party's earlier deposition testimony. *See Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)(citing *Perma Research and Dev. Co. v. The Singer Co.*, 410 F.2d 572, 578 (2d. Cir. 1969)). Here, however, even if Sayler's affidavit alleging that he did not resist arrest is disregarded, there remain genuine issues of material fact as to Sayler's level of resistance to Gilbert's control. In his deposition, Sayler admits resisting "[a] little bit[]" in trying to prevent the officers from handcuffing him, and admits resisting "[a] little bit; not excessive[]" when the officers were trying to put him in the cruiser (Sayler Dep. 59, 61-62.), and under *Graham*, this bare level of resistance would not have justified Gilbert's takedown maneuver.

Gilbert also asserts that Sayler's consumption of alcohol necessarily impaired his ability to accurately recall the events leading up to his takedown by Gilbert. "In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). "[W]hen the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)(citing *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir.1988)). Accordingly, the Court must accept that Sayler was able to

-11-

accurately remember the facts as described in his affidavit for the purposes of deciding Gilbert's motion, despite his admittedly large intake of alcohol. Issues of Sayler's credibility and the weight to be given to his testimony must ultimately be decided by a jury.

It is true that this is a case where an action by an officer alleged to constitute excessive force is captured on video, and in the context of other excessive force cases the Supreme Court has found police conduct reasonable as a matter of law based solely on video evidence. *See Scott v. Harris*, 550 U.S. 372 (2007)(holding that use of potentially deadly force to terminate a dangerous high speed chase was objectively reasonable). Here, however, the video fails to tell the entire story of Sayler's behavior during the time period in which he was interacting with Columbus police officers, and as explained above, Sayler's behavior, which is factually contested by the Parties, is key to evaluating the reasonableness of Gilbert's actions. Furthermore, the contents of the video itself are open to interpretation. A reasonable jury could credit Sayler's explanations that his movements seen in the video were the result of being extremely intoxicated, while the same jury could view the video as corroborating Gilbert's statements that Sayler was actively resisting his control.

## (2) GILBERT'S QUALIFIED IMMUNITY DEFENSE

In addition to denying that his actions were constitutionally unreasonable, Gilbert has also asserted a defense of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity involves a three- step inquiry: the Court must determine (1) whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; (2) whether

the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)(quotations and citations omitted). If qualified immunity is applicable, the official is not only immune from damages, but is immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). Here, the Fourth Amendment right to be free of excessive force while seized by the government is well established.

### (3) SECTION 1983 CLAIMS AGAINST CITY OF COLUMBUS AND/OR CITY OF COLUMBUS DIVISION OF POLICE

Sayler contends that the City of Columbus and the Columbus Division of Police (collectively "Municipal Defendants") are also liable because of a failure to train and/or adequately supervise or discipline Gilbert. While municipalities may be liable for constitutional violations under § 1983, such liability cannot arise merely because constitutional injuries have been inflicted by their employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.*, 436 U.S. at 694. Failure to adequately train employees can rise to the level of a government policy or custom and lead to liability under §1983. *See City of Canton v. Harris*, 489 U.S. 378 (1989). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*, 489 U.S. at 388. In *City of Canton*, the Supreme Court explained that the issue in failure to train cases:

> is whether [the] training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have

-13-

> a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.*, 489 U.S. at 390.

Failure to discipline or supervise employees, an inaction, can also lead to municipal liability under § 1983. In *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996), the Sixth Circuit relied on *City of Canton* to develop a list of four factors that a plaintiff must prove in the context of §1983 "inaction" claims against municipalities. These factors include

> (1) the existence of a clear and persistent pattern of [constitutional violations] by [] employees; (2) notice or constructive notice on the part of the [municipal defendant]; (3) the [municipal defendant]'s tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [municipal defendant]'s custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Id.*, 103 F.3d at 508.

In the present case, Sayler's § 1983 claim against Municipal Defendants for inadequately training Gilbert cannot survive summary judgment. Sayler has not brought forth any evidence supporting a finding that the program by which Columbus police officers are trained is inadequate or that Municipal Defendants were wilfully indifferent to any inadequacy. In his memorandum in opposition to Defendants' Motion for Summary Judgment, Sayler requested a delay for the purpose of deposing Gilbert's supervisor Sergeant Matthew Weekley. (Pl.'s Mem. Opp'n 10.) The deposition of Sergeant Weekley was taken, but Sayler subsequently withdrew his request for a delay, indicating that the deposition had yielded no other facts to include in his memorandum in opposition to the Municipal Defendants' Motion for Summary Judgment. (Document 36.) Accordingly,

-14-

because Sayler has stated no facts supporting his claim of inadequate training, summary judgment is granted for Municipal Defendants as to this claim.

Sayler's claim of inadequate supervision or discipline of Gilbert also cannot survive summary judgment. In apparent support of his claim, he has only offered Columbus Division of Police, Internal Affairs Bureau personnel reports on Gilbert listing several "incidents" involving Gilbert and an allegation that "Gilbert has been the subject of previous complaints of rule violations, excessive force and other improper behavior for which no evidence of any action was taken to retrain, monitor, supervise, or discipline him." (Pl.'s Mem. Supp. 3-4; Ex. 11) Municipal Defendants respond by essentially stating that Sayler has mischaracterized the contents of the reports. (*See* Def.'s Mem. Opp'n 6-7; Gilbert Aff. ¶ 14.)

The Internal Affairs Bureau reports do not meet the factors enumerated in *Doe*. At best, the reports demonstrate that Gilbert, a single officer, has had complaints made against him by the general public. The reports do not, however, demonstrate that these allegations against Gilbert were ignored by the Division of Police or that Gilbert committed unconstitutional acts. The reports fail to demonstrate a clear and persistent unlawful pattern within the Division of Police. Accordingly, summary judgment is granted for Municipal Defendants as to Sayler's § 1983 claims against them, and these claims are dismissed.

## C. SAYLER'S STATE LAW CLAIMS

In addition to his § 1983 claims, Sayler alleges that Gilbert's takedown amounts to an assault and battery under state law for which Gilbert and Municipal Defendants should be liable to him. Defendants counter that they are shielded from state law liability by provisions of the Ohio Revised Code.

### (1) STATE LAW CLAIMS AGAINST GILBERT

Under Ohio Law, municipal employees are generally immune from liability for injuries caused to third parties while acting within the scope of their employment. OHIO REVISED CODE § 2744.03(A)(6) (2010). An exception to that immunity applies if the employee acted with a "malicious purpose." *Id.* § 2744.03(A)(6)(b). Here, Gilbert contends that he is immune from Sayler's state law claims by virtue of § 2744.03(A)(6), while Sayler counters by asserting that immunity does not apply because Gilbert acted with a malicious purpose in injuring him. As explained below, summary judgment is not appropriate for this claim because the record demonstrates genuine issues of material fact as to whether Gilbert acted maliciously.

While "malicious" is not defined by § 2744.03, Ohio courts have defined the term to mean "indulging or exercising malice; harboring ill will or enmity." *Teramano v. Teramano*, 216 N.E.2d 375, 377 (Ohio 1966) (internal quotations omitted). Ohio courts have defined the term "malice" to mean "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Jackson v. Butler County Bd. of Comm'rs*, 602 N.E.2d 363, 367 (Ohio Ct. App. 1991). As with the Court's earlier discussion of the excessive use of force claim, infra, the record reveals genuine issues of material fact. According to Gilbert, he did not mean to injure Sayler, and Sayler's injuries resulted from "interference" with his attempt to perform the arm-bar takedown. (Gilbert Aff. ¶ 11.) Gilbert's statement would support a finding by a reasonable jury that he did not act with malice. Conversely, Sayler has offered sufficient evidence for a reasonable jury to conclude that Gilbert did act in a malicious manner. As noted above, in viewing the video clip depicting Gilbert's takedown of Sayler, a reasonable jury could conclude that the takedown was done with an intention to harm Sayler. Accordingly, summary

-16-

judgment is denied as to Sayler's state law claims against Gilbert.

### (2) STATE LAW CLAIMS AGAINST MUNICIPAL DEFENDANTS

In their motion for Summary Judgement on Sayler's Ohio law claims, Municipal Defendants point to Ohio Revised Code § 2744.02(A)(1) which, in part, provides that

> [e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

OHIO REV. CODE § 2744.02(A)(1) (2010). As used in § 2744.02(A)(1), "political subdivision" is defined to include "municipal corporations." *Id.* § 2744.01(F). "Governmental function" is defined to include the "provision . . . of police . . . services or protection . . . ." *Id.* § 2744.01(C)(2)(a). Sayler has made no effort to explain why § 2744.02(A)(1) would not exempt Municipal Defendants from liability as to his state law claims. Additionally, none of the five exceptions to immunity enumerated in § 2744.02(B) apply in this case. Accordingly, summary judgment is granted to Municipal Defendants as to Sayler's state law claims.

### III. CONCLUSION

For the foregoing reasons, Sayler's Motion for Summary Judgment (Document 22) is **DENIED**, and the Defendants' Motion for Summary Judgment (Document 28) is **DENIED** as to Gilbert but **GRANTED** as to Municipal Defendants.

IT IS SO ORDERED.

3-26-2010

**DATED**

**EDMUND A. SARGUS, JR.**

**UNITED STATES DISTRICT JUDGE**